IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| JAMES JOHNSON, R43615, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 21-cv-450-DWD |
| | ) | |
| DEVIN E. SULLENS, | ) | |
| | ) | |
| Defendant. | ) | |

# MEMORANDUM AND ORDER

**DUGAN, District Judge:**

Plaintiff James Johnson, an inmate of the Illinois Department of Corrections (IDOC) currently incarcerated at Illinois River Correctional Center, brings this action pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights while at Lawrence Correctional Center (Lawrence). Plaintiff alleges that Defendant Sullens retaliated against him for legitimate grievance activity by shaking down his cell. Defendant Sullens' moved for summary judgment (Docs. 42, 45), and Plaintiff responded (Doc. 47). For reasons explained in this Order, the Court finds there is no genuine dispute of material fact, and Defendant Sullens is entitled to summary judgment in his favor.

PROCEDURAL HISTORY

Plaintiff initiated this case by filing a complaint on May 4, 2021. (Doc. 1). Upon initial review, the Court identified one claim to proceed in the instant case:

Claim 1: First Amendment claim against Sullens for confiscating and destroying Plaintiff's property on July 18, 2020, in retaliation for Plaintiff filing grievances against Sullens.

(Doc. 9 at 2).[1]  Defendant Sullens moved for summary judgment on the exhaustion of administrative remedies (Docs. 19, 20), but later opted to withdraw the affirmative defense (Docs. 28, 30).  The case then proceeded to merits discovery.

### FACTS

The evidentiary record consists of Plaintiff's deposition testimony (Pltf. Dep., Doc. 43-1), a disciplinary report Defendant Sullens completed on July 18, 2020, wherein he indicated he conducted a 30-day shakedown on Plaintiff's cell (Doc. 43-2 at 2); and a grievance response from a counselor that indicated Sullens' told the counselor that Plaintiff was eligible for a 30-day shakedown (Doc. 43-3 at 2).  Plaintiff cited this evidence, submitted by defendants, in support of his own contentions of fact but he did not submit any additional independent evidence.  His original complaint also was not accompanied by any additional evidence, such as affidavits.

During the events that are the subject of this case, Plaintiff lived in a general population housing unit at Lawrence.  (Pltf. Dep., Doc. 43-1 at 21:1-2).  Defendant Sullens was a five-day-a week officer on the unit who worked the 3-11 shift.  (*Id.* at 22:4-6).  Prior to the incident in question, Plaintiff had known Sullens for at least a few months.  (*Id.* at 22:18).  On July 18, 2020, Defendant Sullens was responsible for instructing inmates to leave the dayroom and to lockup in their cells.  (*Id.* at 25:2-8).  Several inmates verbalized frustration because they believed Sullens' was cutting the dayroom time short.  (*Id.*).  Sullens retorted that they could file grievances about it and should consult Plaintiff if they

---

[1] A second defendant and an additional claim regarding the deprivation of Plaintiff's personal property were dismissed at initial review.  (Doc. 9).

intended to do so because he often filed grievances. (*Id.* at 25:2-15). Plaintiff then made a comment to Sullens, inquiring as to why Sullens was telling others he would be "telling or something." In Plaintiff's words, the comment led to "a semi, like little argument about it." (*Id.* 25:16-17).

Plaintiff asked Sullens if he was mad at the Plaintiff because Plaintiff previously filed a grievance about Sullens failing to wear his face mask during Covid. (Pltf. Dep., Doc. 43-1 at 26:2-8). Sullens tore his mask off and insisted he was not mad about it. (*Id.* at 26:7-8). Sullens then said, "he was coming back to shake [Plaintiff's] cell and to be ready." (*Id.* at 26:9-10). Either before the search or when he arrived for the search, Plaintiff alleges that Sullens put his handcuffs on his fist and made a comment that alluded to an inmate-staff fight a few weeks ago. (*Id.* at 30:23-31:22). Plaintiff perceived this behavior as an attempt to provoke him. (*Id.* at 31:18-19).

Sullens arrived about an hour later, declined Plaintiff's request for a sergeant, and placed Plaintiff in the shower so he could complete the search. (*Id.* at 26: 11-17). Plaintiff did not visually witness the search, but he got a play-by-play verbal description from a neighboring inmate. (*Id.* at 39:2-12). Plaintiff insists that only his property was tampered with during the search, while his cellmate's property was left undisturbed. (*Id.* at 26:16-18). A pair of headphones and a lamp were broken, and a laundry bag he alleges was full of legal books and paperwork was confiscated. (*Id.* at 26:23-27:5). The bag was labeled as contraband because Sullens said it was designed to be used as a weight bag, but Plaintiff insisted it was simply filled with legal stuff. (*Id.* at 32:17-33:4; Doc. 43-2 at 2 (Sullens recorded in the disciplinary report that the bag "appeared to be used as a weight

bag"). Plaintiff asked for his laundry bag to be returned, but Sullens refused. (*Id.* at 27:5). Plaintiff claims his bag was thrown in the trash the same night, and he was not given a chance to get it back. (*Id.* at 39:19-23).

Prior to the shakedown incident, Plaintiff and Sullens had a few noteworthy interactions. He described one occasion when he confronted Sullens for slamming chuckholes, and they had a "little argument." (Pltf. Dep., Doc. 43-1 at 28:15-29:13). Plaintiff admitted there were a "couple times that [they] bumped heads," but insisted he "never called him out of his name or disrespectful." (*Id.* at 29: 14-18). Related to some of these encounters, Plaintiff stated that he filed grievances about Sullens. He believes Sullens was made aware of the grievances because it was procedure that if an inmate wrote a grievance about a CO, then the CO was required to go and talk to the counselor about the grievance. (*Id.* at 29:24-30:6). Sullens also made a few comments to him about the grievances. (*Id.* at 30:7-10).

On a more general note, Plaintiff stated that cells are regularly shaken down. However, he stated this instance "wasn't a regular shakedown," because Sullens verbally told him he would be back. (Pltf. Dep., Doc. 43-1 at 30:14-16). He further alleges "this is like a common thing that certain COs do when they're upset." (*Id.* at 30:20-21).

In support of the motion for summary judgment, Sullens submitted an offender disciplinary report from July 18, 2020. (Doc. 43-2 at 2). In the report, Sullens wrote that he performed a "30-day shakedown" of Plaintiff's cell, at which time he located a laundry bag filled with books and tied closed with a t-shirt that he perceived as a weight bag. He recorded that the property was contraband and reported it to the shift commander. (*Id.*).

He also attached disciplinary documents that showed Plaintiff was sanctioned for having a "weight bag." (Doc. 43-3 at 9). Additionally, in response to a grievance about the shakedown, Sullens' reportedly told the counselor he performed a routine 30-day shakedown of Plaintiff's cell. (Doc. 43-3 at 1).

## CONCLUSIONS OF LAW

A. Legal Standards

Summary judgment is proper if there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). In determining a summary judgment motion, the Court views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the nonmoving party. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013) (citation omitted). Courts generally cannot resolve factual disputes on a motion for summary judgment. *See Tolan v. Cotton*, 572 U.S. 650, 656 (2014) ("[A] judge's function at summary judgment is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.") (internal quotation marks and citation omitted).

A successful claim for First Amendment retaliation requires that a plaintiff show, "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was 'at least a motivating factor' in the Defendants' decision to take the retaliatory action." *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009) (quoting *Woodruff v. Mason*, 542 F.3d 545, 551 (7th Cir. 2008)). "To make a prima facie showing of causation the plaintiff must show only that the defendant's conduct was a sufficient

condition of the plaintiff's injury." *Greene v. Doruff*, 660 F.3d 975, 980 (7th Cir. 2011). Then the burden shifts to the defendant to rebut plaintiff's prima facie showing by establishing that "his conduct was not a necessary condition of the harm—the harm would have occurred anyway." *Id.*

An inmate may meet the *prima facie* showing by offering direct or circumstantial evidence that the defendant's actions were motivated by retaliation. *See e.g., Kidwell v. Eisenhauer*, 679 F.3d 957, 965-66 (7th Cir. 2012). "Circumstantial evidence, however, is evidence from which a trier of fact may infer that retaliation occurred. 'Circumstantial evidence may include suspicious timing, ambiguous oral or written statements, or behavior towards or comments directed at other [individuals] in the protected group.'" *Id.*

Inmates retain a First Amendment right to complain about prison staff, whether orally or in writing, but only in ways consistent with their status as prisoners. *See Turner v. Safley*, 482 U.S. 78, 89–90 (1987). However, name calling, backtalk, or arguments are not protected speech. *See e.g., Caffey v. Maue*, 679 Fed. App'x 487, 490-91 (7th Cir. 2017); *Kervin v. Barnes*, 787 F.3d 833, 834 (7th Cir. 2015) (finding an inmate engaged in unprotected backtalk when he insisted on talking to a lawyer after a guard said no).

To determine whether a defendant's actions would deter First Amendment activity, the Court must apply a test, asking only "whether the alleged conduct by the defendants would likely deter a person of ordinary firmness from continuing to engage in [the] protected activity." *Surita v. Hyde*, 665 F.3d 860, 878 (7th Cir. 2011). The standard is objective, such that a specific plaintiff's persistence does not undermine his claim. *See*

*e.g.*, *Holleman v. Zatecky*, 951 F.3d 873, 880 (7th Cir. 2020) (observing that the standard "does not hinge on the personal experience of the plaintiff").

Finally, once an inmate makes a *prima facie* showing "[t]he burden then shifts to the defendant[ ] to show that [he] would have taken the action despite the bad motive." *Mays v. Springborn*, 719 F.3d 631, 635 (7th Cir. 2013). If the defendant satisfies this burden, then the plaintiff must present evidence from which a jury could infer that the defendant's proffered reason is a lie or pretext. *Holleman*, 951 F.3d at 879-880 (finding that an inmate failed to show that the reason for his transfer was pretextual).

## ANALYSIS

As an initial matter, Defendant contends that there are different standards of review available for retaliation claims. Specifically, the Seventh Circuit has described a "mixed motive" standard in cases like *Greene v. Doruff*, 660 F.3d 975, 978 (7th Cir. 2011). Under the mixed motive standard, a plaintiff must make a prima facie showing of retaliation, the burden shifts to defendant to show that the action would have occurred regardless of the motivating factor, and the plaintiff must then show that the defendant's reasoning is pretextual or false. By contrast, in *Nieves v. Bartlett*, 139 S.Ct. 1715, 1722 (2019), the Supreme Court set forth a more robust requirement whereby the plaintiff must establish at the outset in the prima facie showing that his speech was the but-for cause of the alleged injury. Although Defendant correctly describes the standard set forth in *Nieves*, that case set the standard for retaliatory arrest claims and was a narrow expansion from retaliatory prosecution caselaw. The Seventh Circuit has explicitly extended *Nieves* to *attempted* arrest claims. *Kitterman v. Belleville*, 66 F.4th 1084, 1091 (7th Cir. 2023)

(assuming the *Nieves* framework applies to attempted arrest claims). However, there is no indication that the *Nieves* framework has been expanded further into all claims concerning inmates and officers. *See e.g.*, *Whitfield v. Spiller*, 76 F.4th 698 (7th Cir. 2023) (analyzing an inmate's retaliation claim post-*Nieves* with no citation to *Nieves* and no heightened standard for a prima facie claim); *accord*, *Holleman v. Zatecky*, 951 F.3d 873 (7th Cir. 2020) and *Manuel v. Nalley*, 966 F.3d 678 (7th Cir. 2020). Counsel does not explicitly argue that this Court should be expanding the *Nieves* framework further and given there is no significant indication the Seventh Circuit has viewed the framework this broadly[2], this Court will not assess the facts of this case under *Nieves*.

*Nieves* makes the pleading standard higher for establishing a prima facie case. Without the heightened *Nieves* standard, Plaintiff must establish through direct or circumstantial evidence that he engaged in protected speech, he suffered an adverse action, and his protected speech was a motivating factor for the action. "Circumstantial evidence may include suspicious timing, ambiguous oral or written statements, or behavior towards or comments directed at other [individuals] in the protected group." *See e.g.*, *Kidwell*, 679 F.3d at 965-66.

The parties dispute all three components of the retaliation claim: (1) the protected speech; (2) the adverse action; and, (3) the existence of but-for causation. Defendant is not explicit early in the brief about if he is arguing that Plaintiff failed to state a prima

---

[2] *But see*, *Winston v. Fuchs*, 837 Fed. App'x 402, 404 (7th Cir. 2020) (retaliation claim brought by federal inmate against mental health staff alleging they retaliated against him for filing a grievance by disciplining him. The Court mentioned *Nieves* but-for causation by saying plaintiff did not put forth sufficient evidence to show but-for causation, but also concluding there was a definitive non-retaliatory reason for the discipline established by defendants' evidence. In *Winston*, the Seventh Circuit did not discuss at all whether *Nieves* should apply beyond retaliatory arrest).

facie case, or if he is arguing that he prevails later in the burden-shifting framework by showing that he would have conducted the search regardless of Plaintiff's speech. However, at the end of the brief, Defendant argues that even if Plaintiff successfully made a prima facie showing, he can still prevail because he demonstrated that his search would have occurred no matter what. (Doc. 43 at 11). The Court will first consider if Plaintiff made a prima facie showing and will then apply the burden-shifting framework.

Starting with the speech, Plaintiff contends that he engaged in protected speech by submitting grievances about Sullens on previous occasions. Sullens also commented on the grievance activity on the day of the shakedown, which Plaintiff argues demonstrates that it was the grievance activity that prompted the shakedown. Grievance activity is protected. But Sullens argues that Plaintiff did not engage in protected speech when he argued with Sullens at the end of the dayroom time on July 18, 2020. It is true that backtalk is not protected speech. *See e.g.*, *Whitfield v. Spiller*, 76 F.4th 698, 708 (7th Cir. 2023) (disruptive or confrontational speech is not protected). If Plaintiff did not engage in protected speech at all, then he failed to establish one of the three elements of a prima facie retaliation claim. Ultimately, the Court need not definitively resolve this dispute between the parties because even reading the record broadly in Plaintiff's favor and assuming he engaged in protected speech, his claim still fails at stage three of the burden shifting framework. Reading the record broadly in Plaintiff's favor, at this juncture, the Court will assume for purposes of this motion that it was his grievance activity or properly voiced concerns that was the speech at issue, and not backtalk or disruptive behavior, and thus it was protected First Amendment activity.

Next, Sullens argues that Plaintiff did not suffer a deprivation sufficient to deter an ordinary person from speech because cells were subject to shakedown at any time. Sullens further argues that even if the shakedown led to the destruction of property, which might be considered adverse, he was not personally responsible for the destruction. There is caselaw to support the notion that because prison cells are always subject to routine shakedowns, a shakedown is not an adverse action. *See e.g.*, *West v. Kingsland*, 679 Fed. App'x 482, 486 (7th Cir. 2017) (finding that by regulation inmates cells were searched every thirty days, and the plaintiff did not offer any evidence that his was searched more often, thus the search was not a deprivation likely to deter speech); *but see Manuel v. Nalley*, 966 F.3d 678, 680 (7th Cir. 2020) (acknowledging the parties' agreement that a shakedown was a deprivation that would likely deter future grievance activity); *Martin v. Nicholson*, 2019 WL 6338062 at * 2 (S.D. Ind. 2019) (shakedowns may occur regularly, but it seems safe to assume they are not welcome by inmates, and thus a reasonable jury could assume a retaliatory shakedown would dissuade an inmate of ordinary firmness from engaging in protected activity). Again, if Plaintiff failed to establish that he suffered an adverse action, then he failed to establish the second component of a prima facie retaliation claim. *See e.g.*, *West*, 679 Fed. App'x at 486 (finding that an inmate did not establish that a shakedown was a deprivation because shakedowns were routine).

Here, Plaintiff's cell was not just shaken down, he also alleges that during the shakedown Sullens improperly characterized property as contraband, and turned the property over despite his protestations that it was legal material. Sullens argues that he

did not personally destroy the property, so even if the taking of the property was adverse he cannot be held responsible. Personal responsibility is important, but a prison employee's actions do not have to cause the entirety of harm enacted to still be exposed to liability for retaliation. *See e.g.*, *Whitfield v. Spiller*, 76 F.4th 698, 707 (7th Cir. 2023) (finding that a prison employee who oversaw an inmate's completion of pre-release paperwork could be held liable for retaliation where her oversight led to a disciplinary ticket and segregation even if she was not personally involved in everything that happened after the initial disciplinary ticket); *Johnson v. Dye*, 2023 WL 6382358 at *9 (S.D. Ill. Sept. 29, 2023) (finding that prison employees whose investigative actions led to a disciplinary ticket were sufficiently involved to support a prima facie showing that their conduct led to a deterrent event). Although Sullens may not have personally destroyed the property, it was his characterization of the property and his confiscation of the property that led to the near instantaneous destruction on the same day as the shakedown. Plaintiff contends that he told Sullens the property was just his legal material and not contraband, but Sullens refused to listen or further investigate. These assertions, and the fact that the property would not have been subject to destruction on July 18th without Sullens actions are sufficient at this point to make a prima facie showing that Plaintiff suffered an adverse consequence linked to Sullens presence in his cell on July 18th. Reading the pleadings broadly in Plaintiff's favor, the alleged confiscation of non-contraband could perhaps be viewed as a deprivation that would deter protected speech.

Finally, the Court reaches causation, the third prong of a prima facie showing, and the ultimate issue that matters in the burden shifting framework. Plaintiff alleges that causation exists because Sullens verbally told him he was coming to shake his cell down, and he returned an hour after the verbal threat to do so. Plaintiff further contends the shakedown was not a "regular shakedown." And that only his property was touched, while his cellmate's property was left untouched.

Sullens argues that mere temporal proximity between the threat and the search is not enough to establish causation. He also argues that Plaintiff's claim he threatened to search the cell is so blatant a threat that it should be discredited because no rational person could believe it. Finally, Sullens argues that even if the Court finds that Plaintiff established a prima facie case of retaliation, he still cannot prevail because his cell was subject to search at any time.

Sullens is correct that temporal proximity alone is not enough to sustain a prima facie case of retaliation. *Manuel*, 966 F.3d at 681. However, Plaintiff has more circumstantial evidence than just the timing. Plaintiff also alleges that he had a history of little conflicts or disagreements with Sullens, that on this day Sullens referenced prior conflicts by mentioning Plaintiff's grievances and tearing off his facemask, and that Sullens behavior of shaking down his cell was consistent with what some staff did when frustrated with inmates. Plaintiff also complains only his property was touched, while his cellmate's property was left undisturbed. Taken together, these assertions are sufficient to make a prima facie showing based on circumstantial evidence that Plaintiff's grievance activity or verbal interaction with Sullens motivated the search.

Sullens contends that the notion he verbally threatened a retaliatory shakedown immediately before conducting a shakedown is outlandish and should be discredited, but summary judgment is almost never the time to make a credibility determination. A reasonable jury could believe that Sullens would never say such a thing and immediately conduct a search, but they could also believe Plaintiff that a search was threatened and that it was conducted shortly after the threat. Thus, reading the record broadly in Plaintiff's favor, he has a prima facie case of retaliation.

Nevertheless, this is not the end of the inquiry because Sullens tendered the underlying disciplinary documents that demonstrate the cell search was routine 30-day search. (Doc. 43-2 at 2). The counselor's grievance response also indicates that it was a routine 30-day search. (Doc. 43-3 at 1). This is the exact sort of evidence that a defendant must proffer to defeat causation. The evidence shows that the cell search would have occurred regardless of his other interactions with Plaintiff. Plaintiff also admitted at his deposition that cells are subject to regular searches. Sullens' evidence shifts the burden back to Plaintiff, who must then show that Sullens' explanation is pretextual or false. *See e.g., Flame-Bey v. Wexford of Indiana, LLC*, 2024 WL 1256017 at *9-10 (S.D. Ind. Mar. 22, 2024) (finding that an inmate provided no evidence to show that defendants' refusal to provide medical treatment based on his combative behavior was a legitimate non-retaliatory reason to deny care).

Plaintiff has only the evidence that got him beyond the prima facie showing, but he does not have any concrete evidence to refute Sullens' statement in the disciplinary ticket that it was a routine search. Actions that would have occurred regardless of the

protected speech cannot form the basis for a retaliation claim. *See e.g., Manuel v. Nalley,* 966 F.3d 678, 681 (7th Cir. 2020) (finding that at summary judgment, an inmate could not proceed on his retaliation claim where the defendants established that they did a cell shakedown based on a report of contraband), *Antoine v. Ramos,* 497 Fed. App'x 631, 634 (7th Cir. 2012) (finding that a shakedown was not retaliatory where guards alleged that they conducted the shakedown due to a report of contraband, and Plaintiff did not proffer any evidence that this was inaccurate). Because Sullens put forth evidence that the search would have occurred regardless of his verbal exchange with Plaintiff, the burden then shifts back to Plaintiff to demonstrate that Sullens' explanation is pretextual or false. *See e.g., Clark v. Lind*, 761 Fed. App'x 633, 636 (7th Cir. 2019) (finding that an inmate failed to proffer sufficient evidence at the third stage of the burden shifting framework to survive summary judgment). Unlike the plaintiff in *Mays v. Springborn*, 575 F.3d 643, 650 (7th Cir. 2009), who had evidence that could allow a reasonable jury to determine the explanation for a strip search was pretextual or false, here Plaintiff has no evidence to rebut Sullens' basis for the routine 30-day search. In *Mays*, an inmate complained to prison officials about the manner in which they were performing strip searches, presented a memo on the topic when it was his turn to be searched, and was immediately subject to a more onerous than usual search that lasted for 5.5 hours. Though the guards said they saw something in plaintiff's anus justifying the extensive search, the Court reasoned that plaintiff's evidence was sufficient to create a dispute for the jury about if the search was routine or if because it was so onerous it was retaliatory.

Here, Plaintiff admitted that cells are subject to routine searches. He argues that there was not contraband in his cell, but he does not argue that the search never should have happened. At most, Plaintiff alleged at the deposition "it wasn't a regular shakedown," but he did offer any explanation as to why the shakedown was irregular. (Pltf. Dep., Doc. 43-1 at 30:15-16). Unlike Mays, who had a plausible explanation for how his 5.5-hour strip search differed from standard strip searches, Plaintiff does not have evidence to show the search of his cell was abnormal other than his statement it "wasn't a regular search." At summary judgment, bare unadorned statements are insufficient. *See e.g.*, *Barnes v. City of Centralia, Illinois*, 943 F.3d 826, 833 (7th Cir. 2019) (a plaintiff's bare unadorned claim that an officer's actions were malicious was not enough at summary judgment to proceed). Even construing the record broadly in Plaintiff's favor, assuming his speech was protected and that he suffered an adverse action by way of the shakedown that led to the destruction of his documents, his claim fails because he does not have evidence to refute Sullens' assertion that it was a routine 30-day shakedown that would have occurred regardless of his grievance activity or their verbal exchange prior to the shakedown. *See e.g.*, *Harris v. Walls*, 604 Fed. App'x 518, 521 (7th Cir. 2015) ("A prisoner who has evidence that officials were motivated to discipline the prisoner because of protected speech cannot prevail if the officials show, without contradiction, that they would have disciplined him anyway for a legitimate reason). Here, Sullens' assertion that this was a 30-day routine search is uncontradicted. Thus, the Court will grant summary judgment in Sullens' favor.

**DISPOSITION**

Defendant Sullens' Motion for Summary Judgment (Doc. 42) is **GRANTED**. The Clerk of Court is **DIRECTED** to enter judgment in Sullens' favor and to **CLOSE** this case.

If Plaintiff wishes to appeal this Order, he must file a notice of appeal with this Court within thirty days of the entry of judgment. FED. R. APP. P. 4(a)(1)(A). If Plaintiff does choose to appeal, he will be liable for the $605.00 appellate filing fee irrespective of the outcome of the appeal. *See* FED. R. APP. P. 3(e); 28 U.S.C. § 1915(e)(2); *Ammons v. Gerlinger*, 547 F.3d 724, 725-26 (7th Cir. 2008); *Sloan v. Lesza*, 181 F.3d 857, 858-59 (7th Cir. 1999). He must list each of the issues he intends to appeal in the notice of appeal and his motion for leave to appeal in forma pauperis. *See* FED. R. APP. P. 24(a)(1)(C). A proper and timely motion filed pursuant to Federal Rule of Civil Procedure 59(e) may toll the 30-day appeal deadline. FED. R. APP. P. 4(a)(4). A Rule 59(e) motion must be filed no more than twenty-eight (28) days after the entry of judgment, and this 28-day deadline cannot be extended.

**IT IS SO ORDERED.**

Dated: November 7, 2024

_____
DAVID W. DUGAN
United States District Judge